IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

NATALIE N. ALBERS                                             PLAINTIFF

V.                      NO. 2:20CV00033 DPM-PSH

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION[1]                  DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States Chief District Judge D.P. Marshall Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Natalie N. Albers ("Albers"), applied for disability benefits on September 8, 2015, alleging disability beginning on January 1, 2007.[2] (Tr. at 13).

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Ms. Albers amended her alleged onset date to June 1, 2016. (Tr. at 13).

The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Albers's claim. (Tr. at 26). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Albers has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.  The Commissioner's Decision:

The ALJ found that Ms. Albers had not engaged in substantial gainful activity since the amended alleged onset date of June 1, 2016. (Tr. at 15). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Albers had the following severe impairments: sinus tachycardia, hypertension, spine disorder, seizure disorder, migraine, affective disorder, anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.*

After finding that Ms. Albers' impairments did not meet or equal a listed impairment (Tr. at 16), the ALJ determined that Ms. Albers had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) she could only occasionally climb ramps and stairs; (2) she could only occasionally stoop, kneel, crouch, and crawl; (3) she could never climb ladders, ropes, or scaffolds; (4) she could never work at unprotected heights or near hazardous machinery; and (5) she is capable of maintaining concentration,

persistence, and pace for performing tasks with normal breaks, in an environment where there is occasional interaction with supervisors, coworkers, and the public. (Tr. at 18).

The ALJ next found that Ms. Albers was unable to perform any of her past relevant work. (Tr. at 24). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Albers' age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 25-26). Therefore, the ALJ found that Ms. Albers was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly

> detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

    B.   Ms. Albers' Arguments on Appeal

Ms. Albers contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the ALJ erred in finding Ms. Albers did not meet Listing 12.04; (2) the ALJ did not give proper weight to the medical

opinions; (3) the ALJ did not conduct a proper analysis of her subjective complaints; and (4) the ALJ's assigned RFC did not fully incorporate her limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Albers suffered from sinus tachycardia, migraines, seizures, low back pain, ADHD, anxiety, depression, and bipolar disorder. She treated with four different cardiologists (stating she was not satisfied with each one's treatment), complaining of shortness of breath and racing heart. (Tr. at 431, 437-441, 451-455, 529-539, 623-630, 650-657). Cardiac examinations were generally normal, and an echocardiogram and a stress test were also normal. (Tr. at 429, 688-693). Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Ms. Albers did not always take medications as prescribed, but reported improvement when she did. (Tr. at 429, 451-452). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). In October 2018, she told her cardiologist she had no shortness of breath, chest pain, or dizziness, and she had a normal physical examination, with normal musculoskeletal examination and no anxiety or depression. (Tr. at 650-657).

Ms. Albers complained of migraines occurring several times a week, but a

5

brain MRI was normal, and she was treated conservatively with medication and occipital blocks. (Tr. at 523-529, 631-639). Clinical neurological exams were generally normal throughout the relevant-time period.[3] (Tr. at 523-529, 623-628). In August 2017, Ms. Albers told her neurologist that she had not had a seizure in two months, and that resting helped her. (Tr. at 529-537). She did not require aggressive treatment for seizures. Her lifestyle choices complicated her health conditions as well. Multiple doctors repeatedly urged her to quit smoking (she was a heavy, every day smoker), exercise, and follow a healthy diet. (Tr. at 364, 429, 621-628, 657-660). She said she was not interested in quitting smoking. (Tr. at 349-350). *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)(the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders); Notably, Ms. Albers told her doctors that she did not use drugs, but she tested positive for marijuana. (Tr. at 18-24, 526, 531, 638). Multiple specialists said that a healthier lifestyle would improve many of her problems.

Ms. Albers underwent intermittent psychiatric treatment, with no inpatient hospitalizations. She suffered from situational anxiety, mood swings, agitation, and depression, but Adderall and Alprazolam helped. (Tr. at 451-464, 555-570). She said that she did not like taking medication at all; noncompliance was a problem, as Ms.

---

[3] A June 2018 clinic note showed she did not complain of headaches. (Tr. at 628-630).

6

Albers did not always take medication as prescribed or show up for scheduled appointments. (Tr. at 61, 414, 469). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of her alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Notes from June 2018 showed her mental impairments were "untreated" and her doctors suggested that regular psychiatric care would really help her. (Tr. at 395-399, 628-631).

With a few exceptions, Ms. Albers was pleasant, cooperative, could communicate well, and had normal insight and judgment at clinic visits. (Tr. at 334, 345, 352-355, 391-399, 474, 621). Ms. Albers did not have significant problems with concentration, persistence, and pace, and she admitted at the hearing to reading up on her medical conditions and her medication protocols, which means she could focus and understand medical language to some degree. (Tr. at 59-60). A consultative examiner found in December 2015 that Ms. Albers had no limitations in adaptive functioning, and she could perform some simple activities of daily living. (Tr. at 395-399). While Ms. Albers argues that she met Listing 12.04 (Depressive, Bipolar, and related Disorders), the Listing requires marked to extreme limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. 20 C.F.R., Part 404, Subpt P, App'x 1. The ALJ fully discussed these four functional

areas and, consistent with a generally benign mental health record (and noncompliance with treatment), she found that Ms. Albers did not meet a Listing. (Tr. at 16-17). *See Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (stating that the burden is on the claimant to show that her impairment matches *all* of the specified medical criteria of a Listing)(emphasis added).

Ms. Albers' treating PCP, James Miller, M.D., wrote two one-page notes, one stating that she could not work for four months (note dated March 9, 2018), and one stating that she could not live in an apartment with stairs (note dated November 14, 2017). (Tr. at 619-620). The ALJ gave limited weight to these opinions. (Tr. at 23). They were conclusory, with no elaboration or citation to medical evidence, and were inconsistent with the record as a whole (a lumbar MRI showed only mild conditions). A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Still, the ALJ credited part of Dr. Miller's statements because she limited Ms. Albers to occasional use of stairs.

The ALJ also gave limited weight to a letter from Don McDonald, M.D., Ms. Albers' treating psychiatrist. (Tr. at 24). The letter, dated December 20, 2016, addressed a recent DWI arrest. (Tr. at 472-474). It suggested that Ms. Albers was always complaint with medications and never abused substances, and claimed she

had dissociative episodes which explained the DWI. *Id.* The letter did not offer an opinion on her ability to work or impose any functional restrictions. It explained her anxiety was related to situational stressors. *Id.* The Court notes that Ms. Albers did use marijuana, contrary to Dr. McDonald's statement. (Tr. at 638). The ALJ properly discounted the opinion.

While Ms. Albers claims that the ALJ did not properly credit her subjective complaints, the record undermines her statements at the hearing that she was totally incapable of performing any daily activities. When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and she may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id*.

The ALJ addressed Ms. Albers' ability to shop for food, talk on the phone, and get along with others. (Tr. at 15-22). She noted Ms. Albers' comment that she did not do house or yard work because she did not care about it. (Tr. at 22). While

9

Ms. Albers claimed she could not focus on anything, at the hearing she said she reviewed medical literature. She also had good insight, fair judgment, and logical thought-processes at most clinic appointments. Additionally, the ALJ properly discussed objective testing results, Ms. Albers' medications and their effectiveness, and her noncompliance with treatment. She thoroughly analyzed the subjective complaints.[4]

The lack of consistent treatment, noncompliance with treatment, mild objective findings, and generally normal clinical examinations demonstrated that the RFC for simple work at the light exertional level was appropriate. An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

## VI.  Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Albers was not disabled. The ALJ did not err at Step Three, she adequately considered the physicians' opinions; she properly analyzed Ms. Albers' subjective complaints; and the RFC incorporated all of Ms. Albers' limitations. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

---

[4] The ALJ did credit some of Ms. Albers' allegations because she assigned an RFC more restrictive than that suggested by the state-agency reviewing doctors. (Tr. at 22-23).

IT IS SO ORDERED this 10th day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE